## Case No. 10,125.

### NESSMITH et al. v. SHELDEN et al.

[4 McLean, 375.] [1]

Circuit Court, D. Michigan. June Term, 1848.

COURTS—FOLLOWING STATE PRACTICE—CONSTRUCTION OF STATUTES—CONSTITUTIONALITY—OBLIGATION OF PROHIBITED ACTS.

1. The courts of the United States will follow the established construction of a statute of a state, or the constitution of a state, if it do not impair the obligations of a contract, nor conflict with the constitution or any law of the United States.

2. It is important that there should be but one rule of property in a state.

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. This rule of construction is followed without regard to the correctness of the rulings of the state court.

4. Acts that are prohibited by law can impose no obligation on any one, nor will the law take cognizance of any matters between those who have united to violate the law.

Mr. Seaman, for plaintiffs.

Messrs. Romeyn, Harbough, Holbrook, and Hand, for defendants.

OPINION OF THE COURT. In the case of Falconer v. Campbell [Case No. 4,620], this court held that the act of the state of Michigan, "To organize and regulate banking associations," passed 15th of March, 1837 [Laws 1837, p. 76]. and the amendatory act thereof, of the 10th of January, 1838, were valid and constitutional acts; and consequently that the corporation, the directors and stockholders organized under those laws, incurred all the responsibilities imposed by them. But the supreme court of the state of Michigan, have since decided that the legislature by a general law, had no constitutional power to pass any act of incorporation, and that consequently, the above acts were void.

This conflict of decision, as might have been expected, induced this court to re-examine their decision with all the legal scrutiny and ability they could exercise on the subject, and, after duly considering the lights thrown upon the question by the supreme court of Michigan, we feel ourselves bound to say, that in no one of the important points ruled in the decision of this court, is our confidence shaken. The opinion delivered by us was submitted to a most careful and rigid scrutiny by Mr. Justice Story, in his lifetime, than whom we know of no higher authority in this or any other country; and his entire concurrence in the opinion has increased our confidence in its legal accuracy. But the point now to be decided is, not whether the decision of this court, or of the supreme court of Michigan, be correct, but whether the federal court, to be consistent with its general course, must not conform to the state decision, depending upon the construction, of a law of the state.

This point has often been considered and decided by the supreme court. On all questions involving the construction of state laws, which do not conflict with the constitution or laws of the Union, the federal courts follow the adjudication of the supreme court of the state, as a rule of decision. This is necessary to prevent two rules of property in the state, which would be productive of great mischief. So far has this judicial policy been carried by the supreme court of the United States, as to reverse their own decision, made conformably to state decisions, when a new rule was established by the state court. Green v. Neal, 6 Pet. [31 U. S.] 291. Under such sanctions, this court can feel no hesitancy in following, in the present case, the state decision. And we have

only to remark, with the greatest respect for the high tribunal of the state, that we yield to the established policy of the supreme court, and not to our legal convictions.

The present being a bill to make responsible, under the general banking laws, the directors and stockholders of the Detroit City Bank, which has become insolvent, a question is made what effect the unconstitutionality of the banking laws, as ruled by the supreme court of the state, has upon the institutions organized under those laws. How does it affect the stockholders, directors, debtors, and creditors of those institutions? This is a question of momentous consequence to the parties concerned, as the amount involved is large. It is also of great importance as a practical question. In the case of Green v. Graves, 1 Doug. 351, the supreme court of Michigan held, "that so much of the act under which the Bank of Niles was organized, as purports to confer corporate rights upon the association organized under its provisions, is unconstitutional and void." The Bank of Niles was organized under the same general law as the Detroit City Bank, consequently the decision, in principle, applies equally to both. By the act to prohibit unauthorized banking (Rev. St. 1846) it is made penal to be concerned, or in any way interested, in a bank not authorized by law.

On the 12th of April, 1827, an act to restrain unincorporated banking associations was passed [Laws Mich. 1827, p. 504], which subjected to a penalty of one thousand dollars, any one who becomes interested in any association for banking purposes, unauthorized by law. That act was re-enacted in 1833, and still remains in force, if not repealed by the general banking law. Under this legislation against unauthorized banking and banks, the decision of the supreme court of the state, that the general banking law is unconstitutional, and the more recent decision, that under the general banking law, the organized companies are not corporations, it is difficult to find any principle on which the obligations on such associations can be enforced. They have no standing within the protection of the law, they having been established in defiance of its prohibitions. As between the individuals concerned, as particeps criminis, the law could give no aid. And it is not perceived how an individual can become indebted to the bank, or have a claim on it, without being involved in its illegality.

Upon the whole, we think the demurrer to the bill must be sustained.

[NOTE. This case was taken to the supreme court upon certificate of division of opinion. The case was there dismissed because of want of proper form in the certificate. 6 How. (47 U. S.) 41.]